[Civ. No. 37361. Second Dist., Div. Five. Mar. 9, 1972.]

FREIDL STEINER, Plaintiff and Respondent, v.
HOUSTON I. FLOURNOY, as State Controller, Defendant and Appellant.

## COUNSEL

Myron Siedorf, Walter H. Miller, Phyllis Kelly Fairbanks and Richard Barnet for Defendant and Appellant.

Rich & Ezer and Mitchel J. Ezer for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—Defendant Controller of the State of California appeals from a judgment of the Los Angeles Superior Court[1] setting aside an order of the San Diego Superior (Probate) Court[2] fixing plaintiff's inheritance tax in estate proceedings which had become final.

*The Background Facts:*
*The San Diego Court Proceedings*

In her will, decedent Fenny Van Leer of San Diego County divided the estate residue into halves, bequeathing one-third ($213,156.86, gross) of the second half of the estate residue to both Mrs. Wenz Steiner (plaintiff here) and Mr. Steiner.[3] The will provided that should certain of the other devisees of the second half of the estate residue "predecease me and/or both Mr. and Mrs. Wenz Steiner, then his her or their share I will devise and bequeath [to certain heirs-at-law of the first half of the estate residue]." Mr. Steiner predeceased decedent-testatrix.

On Sptember 15, 1966, in reliance upon the report of the estate executor[4] that plaintiff here was entitled to the entire Steiner share, and also upon the report of the inheritance tax appraiser fixing plaintiff's tax accordingly, the court made its "Order Fixing Inheritance Tax," imposing upon plaintiff the obligation to pay inheritance taxes ($35,613.23, gross) on the entire Steiner share.

A few days thereafter, the executor raised to the court the question of whether plaintiff was entitled to the entire Steiner share under the language used in the will, and on September 27, 1966, the court suspended distribution of Mr. Steiner's portion of the Steiner share until the proper

---

[1]Hereinafter, the Los Angeles court.

[2]Hereinafter, the San Diego court.

[3]Hereinafter, the Steiner share.

[4]The executor was also one of the heirs-at-law of the first half of the estate residue.

distributee(s) of said share were determined. However, the court did not suspend its prior order imposing on plaintiff the obligation to pay inheritance taxes on the entire Steiner share. On February 14, 1968, after contested hearing, the court determined that Mr. Steiner's portion of the Steiner share had lapsed and devolved to decedent's heirs-at-law. However, again, the court failed to void its order fixing plaintiff's inheritance taxes on the entire Steiner share, and her obligation remained.

In the meantime, on November 14, 1966, the order fixing inheritance tax made September 15, 1966 became final upon lapse of the 60-day appeal period, and the inheritance tax fixed was then paid by the executor.

On May 17, 1968, after noticing her appeal from the court's order of February 14, plaintiff abandoned it in return for a cash settlement of somewhat less than one-half of the net value of Mr. Steiner's portion of the Steiner share. In further settlement, as plaintiff had already paid the inheritance taxes for the entire Steiner share, the heirs to whom Mr. Steiner's portion was distributed reimbursed plaintiff the amount they would have had to pay on Mr. Steiner's portion had plaintiff not paid the tax. These settlements were approved by the court. However, because the tax which plaintiff had paid had been assessed on the entire Steiner Share and on a graduated scale, it was in excess of the amount which the heirs would have had to pay on Mr. Steiner's portion, thus in excess of the amount they reimbursed her. The overpayment for which plaintiff was not reimbursed amounts to $4,703.47.

### The Instant Los Angeles Court Action
### Brought by Plaintiff

Plaintiff brought her instant action in the Los Angeles court as a suit in equity to set aside and modify the San Diego court order fixing inheritance tax "due to extrinsic mistake" and to recover the unrecouped portion of her inheritance tax overpayment. On June 4, 1970, after trial, the Los Angeles court "vacated and set aside" the San Diego court order fixing inheritance tax, determining that that order was obtained by extrinsic mistake, and allowing plaintiff 30 days after the Los Angeles court judgment became final to present to the San Diego court "appropriate objections to the Report of the Inheritance Tax Appraiser." It is from this order of June 4, 1970, that defendant Controller appeals.

### The Appeal

In their original briefs to us, the parties argued the issue of whether the mistake upon which the Los Angeles court founded its "judgment" was

"extrinsic" or "intrinsic," and no attention was given to the *jurisdictional* question suggested by the "judgment" of the Los Angeles Court. At our suggestion, reargument and to some extent rebriefing was had on the question of jurisdiction, and our determination as to the validity of the judgment on appeal before us is based solely on the answer to that question. We have concluded that for the reasons hereinafter set forth, the Los Angeles court did not have jurisdiction to determine the validity[5] of the San Diego court's inheritance tax order, specifically wherein it sought to not only set aside that order, but to reopen the San Diego court's probate determinations by providing a time within which plaintiff might make objection to a probate order which, presumptively, at least, had long become final. (See Rev. & Tax. Code, § 14512.)

■ Initially we are confronted with what appears to be an attack upon a judgment for extrinsic mistake; such an attack is one commonly recognized on the equity side of the superior court of the state which obtains jurisdiction of the parties.[6] ■ As stated in defendant-appellant's opening brief: "An order determining inheritance tax is in the nature of an ordinary civil judgment and has the same force and effect." (Rev. & Tax. Code, § 14672; *Estate of Willis* (1950) 34 Cal.2d 782, 788 [215 P.2d 453].) Plaintiff concurs in defendant's statement of that principle of law, from which she seeks to provide the Los Angeles court with equity jurisdiction over the San Diego court's taxing order. ■ Plaintiff relies upon *Deas* v. *Lido Lumber Co.*, 132 Cal.App.2d 402 [282 P.2d 90]; *Herd* v. *Tuohy*, 133 Cal. 55 [65 P. 139]; and *Young* v. *Young Holdings Corp.*, 27 Cal.App.2d 129 [80 P.2d 723], with particular reliance upon *Deas;* but we feel that *Deas* (at pp. 406-407), when correctly read, states the jurisdictional rule in its quotation from *Bullard* v. *Zimmerman*, 82 Mont. 434 [268 P. 512 at pp 516-517]: " ' "It is competent for every court, whether superior or inferior, to treat as a nullity any judgment which can be shown to have been obtained by manifest fraud." *State ex rel. Phelan* v. *Engelmann, supra* [86 Mo. 551].'

■ " 'The cases cited by [*Bullard* defendant] are cases in which one court sought to interfere with the process of another court of equal juris-

---

[5]The prayer of plaintiff's complaint, in pertinent part: "That the Order Fixing Inheritance Tax be declared modified by reducing the amount of inheritance taxes assessed against the Steiner Share of the residue by $4,703.47" and "That this Court order and direct defendant to draw his warrant in favor of plaintiff in the sum of $4,703.47 as and for a refund in full of the inheritance taxes overpaid by plaintiff."

[6]There is no question but that the parties submitted to the purported jurisdiction of the Los Angeles court, and even stipulated to the form of the judgment ultimately rendered. Such submission, however, does not confer jurisdiction.

diction, in a live case, still at issue, with the litigation in progress, which may not be done. It is entirely different when a case is at an end, merged in a judgment, and suit is brought to annul the judgment on the ground of fraud. We hold that the court in which this suit was instituted had jurisdiction, and therefore so had the court to which it was transferred.' " The Los Angeles court recognized (as did the parties) that the tax determination necessarily must emanate from the San Diego court, and the Los Angeles court carried into its order (by stipulated wording) the very life of the probate case "still at issue" in San Diego. This is the very interference which the *Deas* case and its cited authority (*Bullard*) stated "may not be done."[7] (See *Estate of Cox,* 8 Cal.App.3d 168 [87 Cal.Rptr. 55].) As the quotation from plaintiff's complaint shows, she articulates an attack upon the fixing of the inheritance tax. The unalterable fact is that her attack is rather that the inheritance tax was fixed upon the executor's petition that distribution to plaintiff be in the amount bequeathed to both plaintiff and her deceased husband, and that because of the ultimate court determination of heirship, plaintiff did not receive Mr. Steiner's portion of the Steiner share, it going to the heirs-at-law. There is no contention of error in the computation of the tax based upon the recommended distribution set forth in the original petition for distribution filed by the executor; it is the fixing of the tax upon property not received by plaintiff (except by compromise settlement, with which we are not here concerned) to which her attack is truly directed. Such attack must be made within the arena of the only court with the power to set the tax, i.e., the San Diego Probate Court.

---

[7] The cases of *Herd* v. *Tuohy, supra,* and *Young* v. *Young Holdings Corp., supra,* cited by plaintiff, turned upon the holding that the contention that the actions there involved should have been commenced in a county other than that in which jurisdiction had been assumed was answered by the provisions of Code of Civil Procedure section 392, which reads:

"(1) Subject to the power of the court to transfer actions and proceedings as provided in this title, the county in which the real property, which is the subject of the action, or some part thereof, is situated, is the proper county for the trial of the following actions:

"(a) For the recovery of real property, or of an estate or interest therein, or for the determination in any form, of such right or interest, and for injuries to real property;

"(b) For partition of real property;

"(2) The proper court for the trial of any such action, in the county hereinabove designated as the proper county, shall be determined as follows:

"If there is a municipal or justice court, having jurisdiction of the subject matter of the action, established in the city and county or judicial district in which the real property which is the subject of the action, or some part thereof, is situated, such court is the proper court for the trial of such action."

We conclude that the relevant sections[8] of Revenue and Taxation Code under division 1, part 8, chapter 12, article 1 ("Court jurisdiction and Procedure Generally") (particularly that portion which we see fit to underline in the footnote) confer exclusive jurisdiction to the courts in San Diego County.

We believe that our foregoing analysis confirms the reconcilability of the decisions in *Security-First Nat. Bank* v. *Superior Court,* 1 Cal.2d 749, 757[9] [37 P.2d 69] and *Estate of Auslender,* 53 Cal.2d 615, 626[10] [2 Cal.Rptr. 769, 349 P.2d 537] as set forth in 5 Witkin, California Procedure (2d ed. 1971) section 177, page 3747. There, Mr. Witkin states: "The *Charters* and *Auslender* cases are nevertheless reconcilable with the *Security Bank* case. In *Estate of Charters* (1956) 46 Cal.2d 227, 293 P.2d 778, the issue of validity of a prior order settling a trustee's account arose on *a petition by the trustee for instructions* on disposition of accumulated income of the trust. In *Estate of Auslender, supra,* the issue of validity of two prior consent judgments against the estate arose in a *proceeding to settle the*

---

[8]Revenue and Taxation Code section 14651:

"The superior court which has acquired jurisdiction in probate of the estate of any decedent shall hear and determine in the probate proceedings all questions relative to any tax imposed by this part on each transfer subject to this part from the decedent to any person sharing in the estate, whether the property transferred is in the estate or not."

Revenue and Taxation Code section 14654:

"Notwithstanding any other provision in this article: (a) Any action brought pursuant to this part against the State by any interested person for the purpose of quieting title to any real property against any lien or claim of lien for any tax imposed by this part shall be commenced in the superior court of the county in which any part of the property is situated.

"(b) Any action brought pursuant to this part against the State by any interested person for the purpose of quieting title to any personal property against any lien or claim of lien for any tax imposed by this part, *or for the purpose of securing a determination that any property is not subject to any lien for nor chargeable with any such tax, shall be commenced in the superior court which has or had jurisdiction of the administration of the estate of the decedent who transferred the property."* (Italics added.)

[9]"The probate court has no general equity jurisdiction. . . . Consequently on a collateral attack the probate court is not vested with power to avoid its own orders or decrees which have become final on the ground that extrinsic fraud has been practiced in obtaining the order or decree. Such power is appropriately vested in a court having general equity jurisdiction."

[10]" 'The probate court, while sitting in matters of probate, is a court of general jurisdiction, and in determining any questions arising in the administration of an estate which it is authorized to decide may bring to its aid "the full equitable and legal powers with which as a superior court it is invested." [Citing from *Guardianship of Cornaz,* 8 Cal.2d 347, 359 [65 P.2d 784].]' "

"[Footnote 1] [I]nsofar as [*Security Bank*] holds that a probate court cannot set aside its prior order, which order has become final, on the ground of extrinsic fraud, it appears to have been impliedly overruled by *Estate of Charters,* 46 Cal.2d 227 [293 P.2d 778]."

*first* account of the coadministrator charged with fraud in stipulating to the judgments. Thus, in each case the court 'was engaged in the exercise of its special and limited probate jurisdiction when it made the respective orders in question. . . . *Each of these proceedings* is well within the accepted functions of a court exercising its *probate jurisdiction,* and, *in determining matters properly before it,* the court had the power to apply equitable principles.' (9 C.A.3d 322.)"[11]

Tangentially before us is the question of the procedural method to be employed by plaintiff in her effort to achieve the results to which at least the Los Angeles court, and also the authors of this opinion, believe plaintiff is entitled: that is, to have the inheritance tax fixed upon the amount of the actual bequest she received, or giving consideration to the compromise settlement which was approved by the San Diego court. It appears that proceedings in the nature of *Estate of Doane,* 62 Cal.2d 68 [41 Cal.Rptr. 165, 396 P.2d 581] would be appropriate, for the subsequent orders of the probate judge clearly indicate that he had no intention of not setting aside the taxing order as well as the initial order determining distribution.

The judgment (order) is reversed.

Kaus, P. J., and Reppy, J., concurred.

On March 22, 1972, the opinion was modified to read as printed above.

---

[11]Mr. Witkin thereafter, citing *Young, supra,* states: "*Court of Another County.* Although relief by *motion* must necessarily be sought in the court which rendered the judgment (infra, § 179), the independent action can be brought in the court of another county."

In light of the factual problems with which *Young* and its kinship cases dealt, we do not feel that we have arrived at a result incompatible with the principles of law espoused in Witkin.