## CHARLES W. LORD *vs.* HARRY W. SMITH.

*Question of Fact as to Ownership of a Business—Injunction—
Conduct by Plaintiff Held Not to Have Been in Fraud
of Creditors and Not to Disentitle Him
to Relief in Equity.*

The plaintiff's bill in this case alleged that defendant had been employed for a number of years as a salaried clerk in a busi-

ness established by plaintiff, but that the defendant had recently claimed to be the owner. The defendant alleged that he was the sole proprietor of the business, and that the plaintiff had served as his clerk. The bill prayed for an injunction restraining the defendant from interference with the business or property of the concern, and from soliciting its patrons. The evidence examined and *held* to establish the allegations of the bill and to entitle the plaintiff to the relief prayed.

Upon the failure and insolvency of a firm of which the plaintiff was a member, he surrendered to its creditors all his interest in the firm, and all of his individual property. Before these creditors were paid, plaintiff began a new business as the sales agent of manufacturers, in which he employed one S. as his clerk, and in order to prevent the proceeds of the sales to be made by him as agent from being attached by his former creditors, he placed his bank account and insurance in the name of S. Afterwards, when S. claimed to be the owner of this business, plaintiff filed a bill for injunction and other relief against such claim. *Held,* that the purpose of the plaintiff in thus placing his bank account in the name of S. was not to defraud his creditors, who were afterwards fully satisfied, and that consequently he is not disentitled to the relief sought, by reason of the maxim that he who comes into equity must come with clean hands.

*Decided December 9th, 1908.*

Appeal from the Circuit Court of Baltimore City (PHELPS, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Wm. S. Bansemer* (with whom was *J. Kemp Bartlett* on the brief), for the appellant.

*William A. Wheatley,* for the appellee, submitted the cause on his brief.

Worthington, J., delivered the opinion of the Court.

The litigation in this case grows out of a dispute between the parties as to which is the proprietor of a certain brokerage business carried on in Baltimore City for a number of years past under the trade name and style of Charles W. Lord & Co.

The appellant, who was the complainant below, claims that the business was established by him in 1895, and has ever since been conducted by him as the sole proprietor, with the appellee (the defendant below) as his trusted and confidential clerk. While, on the other hand, the appellee contends that the business was established in 1895 by him, and that it has ever since been conducted by him as sole proprietor, with the appellant as his clerk.

According to the testimony of the parties themselves, neither of them was aware of the claims and pretensions of the other until the month of November, 1907, when a controversy took place between them concerning the ownership of the business, and Mr. Lord, according to his testimony, claimed the whole; but according to Mr. Smith's testimony, Mr. Lord said in the course of that controversy that he had as much interest in the business as Smith had; that half of it was his. At the same time Smith claimed that the whole business belonged to him.

Shortly after this conversation, that is to say, on December 24th, 1907, Mr. Lord filed the bill of complaint in this case in the Circuit Court for Baltimore City, setting forth his claims to the business as sole proprietor, alleging that he had established the business in the early part of the year 1895, at 21 Grant St., in Baltimore City, and had there begun operations as a manufacturer's agent of wooden ware and kindred merchandise. That Harry W. Smith, the defendant, had been taken into the employ of the old firm of Lord and Robinson when he was a boy fifteen years of age, and had continued in its employ for many years until the failure of that firm in 1893. That complainant had been a member of the firm of Lord and Robinson until it went into the hands

of receivers in the year 1893, and that there had developed toward Smith on complainant's part an attitude of trust and confidence. That upon commencing business again, after his failure, the complainant took with him to 21 Grant Street the said Harry W. Smith, in whose integrity he had implicit confidence, at the weekly salary of fifteen dollars per week, which was subsequently increased to twenty-five dollars per week.

That at the time he started the new business, the complainant was not entirely free from the obligations of the old firm, and as he contemplated handling in a fiduciary capacity, to wit, that of factor or sales agent, the money of such of his old business associates as might entrust the sales of their merchandise to him, he feared that if he opened a bank account in his own name, and deposited therein such monies, together with his own earnings, that such funds might be subject to the danger of being tied up by proceedings instituted by some of his old creditors, who had not at that time been settled with; and for the sole purpose of avoiding this danger he opened a bank account in the name of Harry W. Smith, with his consent, and took a power of attorney from the said Smith, authorizing the complainant to draw checks against said account.

That both he and Smith thereafter drew checks upon this account, so opened in the name of Smith, and that such practice was continued down to the time of filing the bill of complaint. That by reason of the confidential relations between the complainant and Smith, the latter was allowed broad powers in the handling of the complainant's cash and bank deposits, and that Smith, acting under these broad powers, would from time to time draw checks for his own purposes, over and above his weekly salary of $25, and charge them on the books of the complainant, and would from time to time purport to put back sums of money to replace the amounts so withdrawn, which sums put back, however, did not in fact measure up to the amounts withdrawn.

That in the course of time the excess of the withdrawals

by Smith over the amounts put back by him was over $9,000, not including withdrawals from the cash drawer.

That in October, 1907, Smith had purchased with $1,750 of the complainant's money a ground rent on the dwelling property known as No. 2318 Guilford Avenue, in Baltimore City.

The bill further averred that Smith had recently set up pretensions that he was the sole owner and proprietor of the business, and that all the money taken by him was his own money, for which he was accountable to no one.

That Smith had threatened, unless complainant would recognize Smith's pretensions, to solicit away from the complainant his patrons and customers, which it was averred Smith was able to do.

The prayers of the bill were for an injunction:

(1) Prohibiting said Harry W. Smith from exercising any control or interference in the complainant's business, as it was known under his trade name of Charles W. Lord and Company.

(2) That said Smith be enjoined from collecting any monies or from diverting any consignments coming or due to the said Charles W. Lord and Company.

(3) That he be further enjoined from making any withdrawals from the bank deposit of the complainant, standing in the name of Harry W. Smith in the National Bank of Commerce of Baltimore.

(4) That he be further enjoined from removing any of the books of account, or other evidence of the state of business of Charles W. Lord & Co., from the office thereof, and that he return and replace in said office any books or other evidences of account of said business that were then under his individual control.

(5) That he be further enjoined from soliciting the patrons of the complainant, trading under the name of Charles W. Lord & Co., to discontinue business with the complainant and to give their patronage to the said Smith.

(6) That pending these proceedings, the defendant be

further enjoined from disposing of the lot of ground No. 2318 Guilford Avenue, mentioned in the bill of complaint.

Also that said Harry W. Smith discover and set forth in detail all the sums of money taken by him during the whole period of his employment since 1895, in excess of $25 a week for services, and that Smith be decreed to make restitution and payment of all sums of money shown to be due by him to the complainant, and for general relief.

The same day an injunction prohibitory and mandatory was issued as prayed in the bill of complaint, except as to the prohibition against the disposition of the lot on Guilford Avenue.

On February 17th, 1908, the defendant filed his answer, denying all the material allegations of the bill of complaint and averring that he himself "was, has all the time been, and still is the sole owner of said business," and that no money had ever been contributed toward or used in said business except the defendant's own money, or money borrowed by him for that purpose. That the complainant had never made any pretensions to be any other than an employee of the defendant until shortly before filing the bill of complaint, and then he claimed to be only part owner of the business.

He asked that the injunction theretofore granted be dissolved and the bill dismissed.

After much time and patience spent in comparing the evidence of the several witnesses, we have finally been able to thread our way through the great mass of most conflicting testimony, taken to support the contentions and claims of the respective parties.

It would extend this opinion to an unreasonable length to attempt to set out here a synopsis of the evidence, consisting as it does of over 600 printed pages; but after the most careful consideration that we have been able to give it, we are unable to reconcile the claims of Smith with certain material facts established by the exhibits and documentary evidence produced at the hearing. One of these facts is that at the very commencement of the business, in 1895, certain

office furniture of the old firm of Lord and Robinson was purchased of the receivers of the firm for the use of the new concern at 21 Grant Street. Lord testified that he gave the money ($25) to Smith with which to buy the property for him. Smith, on the other hand, testified that he bought the furniture with his own money for his own use. A receipt was, however, finally produced by Lord which on its face shows that the money had actually been paid by Smith, but on the back of the receipt and of the same date was the following indorsement, signed by Smith:—

"For value received I hereby transfer the articles mentioned, to Charles W. Lord.

(signed) H. W. SMITH."

Smith's explanation of why he made this transfer, in view of the fact that he claimed to have himself established the business, is, in our judgment, far short of being satisfactory.

Another important fact not disputed is that the assessment of the property of the concern on the tax books of Baltimore City was in the name of Charles W. Lord & Co., Smith's name not being mentioned in connection therewith. Besides this, Mr. Lord produced at the hearing below books of entry concerning the business from its very beginning in 1895 to the time the controversy between him and the defendant arose in 1907, in which books were entered the items of cash received and cash paid out during the whole period, as it seems, these entries in many respects substantiating Lord's claim to be the founder and sole proprietor of the business. The production of these books, or at least of some of them, was evidently a great surprise to Smith, who testified that he understood from Mr. Lord that they had been burned in the great fire of February, 1904. These books show the payment, weekly, to Harry W. Smith, on every Saturday, at first of the sum of $15 and later of the sum of $25, charged either to "hands" or "expenses," and the entries continue regularly

from week to week down to October 10th, 1903, and most of these entries, as it appears, were made in the handwriting of Smith himself. The withdrawals of money by Mr. Lord, however, were not charged to either "hands" or "expenses," or any other distinct account, and, besides, they vary in amount from time to time, thus clearly indicating that Smith worked on a salary, and that Lord did not. Another significant fact is that the contracts for the rental of the rooms at different times occupied for the purposes of the business and the rent bills for the use of the same were invariably made in the name of Charles W. Lord & Co.

Another quite significant fact, and one that cannot be disputed, is that the license to carry on the business was, from 1895 to 1907, always issued to Charles W. Lord alone, and this was true although the applicant who made the representations to the license clerk, apparently under oath, was several times H. W. Smith himself.

In the year 1907, however, upon the application of Smith the license was issued for the first time to Charles W. Lord and Harry W. Smith, trading as Charles W. Lord & Co.

Much other testimnoy of a character tending to prove Mr. Lord to be the founder and proprietor of the business was adduced, but need not be referred to here in detail.

Mr. Smith, on the other hand, relied upon the fact that the bank account was in his name and checked upon by him at all times as he saw fit. That besides his regular weekly salary, charged to him as such, he drew various sums from time to time in the aggregate largely in excess of his salary, some of which afterwards he returned and some he did not, claiming that as the business was his he was not accountable to anyone for such withdrawals. He further relied upon the fact that the insurance on the stock carried by the concern was in his name, and that after the great Baltimore fire, in February, 1904, the amount of this insurance was paid to him.

Certain manufacturers dealing with the concern also testified that they had always dealt with Smith as the proprietor,

and that they had no dealings with Lord whatever, and they regarded Smith as the owner of the business. Certain members of the office force also testified in effect that they regarded Mr. Smith as the proprietor. As we have before indicated, however, the controlling facts of the case upon the question as to who started the business in 1895, at 21 Grant Street, and continued it down to the time of filing the bill of complaint in this case, are, in our opinion, those first above recited in support of Mr. Lord's contention.

We must therefore hold that Charles W. Lord was the founder and proprietor of the business, and that Harry W. Smith, the defendant, was his salesman and confidential clerk.

The learned Judge in the Court below did not find to the contrary of this, but dismissed the complainant's bill upon the ground that Mr. Lord, at the time he commenced business in 1895 had not paid off his former creditors, and that consequently the placing of the bank account and the insurance in the name of Harry W. Smith was done for the purpose of defrauding, hindering and delaying these creditors.

He then applied the maxim, that he who comes into equity must come with clean hands, and held that under the circumstances a Court of equity should grant no relief, but leave the parties where it found them; citing *Roman* v. *Mali,* 42 Md. 574, and some other cases in support of his position. While we recognize and approve the doctrine of those cases, yet we cannot agree that this is a case to which the maxim above quoted is applicable.

As the complainant was about to embark in a business requiring him to handle goods on commission, and, in consequence, to have in his custody and possession from time to time the monies of other people, he may very well have desired to save those persons the possible embarrassment and expense of having their money, if deposited in his name, tied up by way of proceedings in attachment.

Mr. Lord had previously to embarking in the new business surrendered and given up not only all his interest in the assets of the firm of Lord and Robinson, but also all his own

individual property and assets for the benefit of his creditors, and it appears that these assets have yielded or will yield sufficient to satisfy all his obligations and leave a surplus besides.

It is true that this result may not have been known in 1895, when the account in bank was first opened in Smith's name, but Lord had then already stripped himself of all he owned in order to satisfy his obligations in full, and was starting business anew, with other people's merchandise and upon other people's credit.

While we have no purpose to relax the strict enforcement of the maxim, that "He who comes into equity must come with clean hands," or, as it is sometimes expressed, "He that hath committed iniquity shall not have equity," yet in this case we are unable to satisfy ourselves that Mr. Lord has been guilty of any such iniquity or moral turpitude as should deny him the aid of a Court of equity.

After a somewhat extended research, we have been unable to find in this State or elsewhere a reported case in which the maxim has been applied under circumstances like these, and as the refusal of the Court to act always gives the defendant an unfair advantage of the plaintiff, contrary to the real justice of the case, the application of the maxim as a defence is only allowed for reasons of public policy, as a preventive check upon fraud and wrongdoing.

After a careful consideration of a number of adjudged cases, as well as of the purpose in view in the application of the maxim, we are unable to attribute to Mr. Lord any such fraud or wrongdoing as we think demands or justifies the application of the maxim in this case.

We hold, therefore, that he is entitled to relief.

It must be remembered that an agent owes to his principal the utmost fidelity, and that he is not allowed to make any profit for himself from the business in which he is employed to the detriment of his principal.

We think the plaintiff entitled to the benefit of the injunc-

tion as originally granted and to the accounting as prayed in the bill of complaint.

It is not for this Court to state an account between the parties, even if it were possible to do so from the record; that is more properly the business of a book-keeper or accountant; all we can do is to point out the principles on which it should be stated.

For the reasons assigned we think the decree of the lower Court should be reversed and the cause remanded to the end that there may be further proceedings in accordance with the views herein expressed.

> *Decree reversed with costs and cause remanded.*