[S. F. No. 14615. In Bank.—January 31, 1933.]

BASCOM H. BIRNEY, Respondent, v. MARIAN BIRNEY, Appellant.

354

Robert E. Fitzgerald for Appellant.

James F. Brennan for Respondent.

THE COURT.—This action is one brought by a father against his daughter, to establish a trust in certain securities and the proceeds of other securities sold and held by defendant, and for a decree requiring her to deliver up the

same. Judgment went in favor of plaintiff for the return of certain specified securities of the value to $39,646.67, for a net money judgment representing the proceeds of the sale of other securities of the value of $22,021.19, and a judgment for the further sum of $1351.59 against defendant Bank of California National Association, representing the amount on deposit to the credit of defendant Marian Birney, which account represented a portion of the proceeds of the sale of plaintiff's securities. A motion for a new trial was made and denied. This is an appeal from the judgment and order.

Three main points are relied upon for a reversal. It is claimed that the evidence does not support the judgment; that the plaintiff by his own showing is not entitled to the equitable relief sought because of the fact that he comes into court without clean hands; that the money judgment for $22,021.19 is not supported by, but is contrary to, the evidence. The record does not afford pleasant reading.

The complaint, in substance, alleges that defendant Marian Birney is the daughter of plaintiff; that the most confidential relations always existed between the parties; that at the request of defendant, plaintiff delivered to her certain securities of the value of $63,000 for safekeeping, which securities she promised to return upon demand; that demand was made for their return but defendant refused to deliver the same to plaintiff. Defendant denied ownership of the securities in plaintiff except securities of the value of $6,000 which she offered to return.

At the trial it appeared in evidence that plaintiff, the father of defendant Marian Birney and another younger daughter, Mrs. Clementine Birney de Prosse, married many years ago in the state of Illinois. The daughters are the issue of that marriage. Plaintiff was a practicing physician and accumulated several thousand dollars from his practice. He and his wife concluded to move to the state of New York to better their condition. Plaintiff there gave up the practice of his profession and engaged in the bond and real estate business. He was successful in his enterprise and accumulated various securities of the approximate value of $62,000. In addition thereto he had acquired two parcels of real property. The real property consisted of a farm at Kinderhook, New York, known as Lindenwald, the

former home of President Van Buren. This property with its furnishings was of the value of between $25,000 and $40,000. The other parcel consisted of a home in the state of Vermont, valued at $8,000 and which was subsequently sold for that amount. His income was large, varying from $25,000 to $45,000 a year. The family lived extravagantly and traveled extensively. Both daughters had been highly educated and given every possible advantage at considerable cost to plaintiff. While at school he permitted them to draw directly upon his bank account. In the year 1922 his wife Grace E. Birney died, and plaintiff succeeded to the above-described property by succession. Within a few months thereafter he executed to defendant Marian Birney a deed to the Lindenwald property. At the same time he caused the safe deposit box in which his securities were kept to be placed in the joint name of himself and this defendant with the right of survivorship, his object being that, in the event of his death, his daughters could acquire them without the probate of his estate. Later in the year 1925, plaintiff opened a custodian and trading account at the National City Bank in New York, to which there were transferred the securities referred to. This account was likewise a joint account with the right of survivorship in defendant Marian. A checking account was also opened at the Guaranty Trust Company in Brooklyn, New York, in the joint names of plaintiff and this defendant, with the right of survivorship. From 1922 to July, 1929, all of the securities and all of the money were thus held, and this appellant for her younger sister and herself, whether at school or traveling, and for the maintenance and payment of taxes of the Lindenwald farm, drew freely upon the funds in the bank in large amounts. About this time plaintiff took his daughters on a trip to Europe at considerable expense and on this occasion presented his younger daughter, who was to be married, with several thousand dollars for her trousseau. In addition thereto he presented her with an automobile and a sum of money. Defendant Marian had taken a two years' course in law at Yale University, and plaintiff had great confidence in her legal and business ability, considering her one of the smartest women in the country. He had like confidence in her integrity. In the year 1927 he married a second time, this wife being Myrtle

K. Birney. Defendant Marian then came to California where she was for a time a student of agriculture at the University of California. Plaintiff still continued to support her. The marital relation of plaintiff and his second wife proved unfortunate and she brought suit against plaintiff for separate maintenance. About this time plaintiff visited California and advised with defendant concerning his marital affairs and his securities. Defendant informed him his wife was nothing but a ''gold digger'' and that unless he turned over to her all of his securities his wife would get possession of the same. Later defendant visited plaintiff in New York and again advised him to turn over his securities to her for his own protection. Acting upon this advice, plaintiff caused the National City Bank to forward to defendant in San Francisco bonds and other securities of the face value of $56,000 in her sole name, at the same time retaining in New York securities of the value of $7,000. He advised defendant to leave the securities sent her with the local representative of National City Bank until she heard further from him. Contrary to these instructions defendant sold the securities through the Bank of California for the sum of $58,206.74 and this amount was placed to her credit in said bank. Prior to this sale, defendant had sold two Austrian bonds for the sum of $2,000. She also received coupons from certain of the bonds prior to their sale in a sum in excess of $2,000, the total amount she received being over $62,000. Subsequently defendant sent $40,000 to New York for investment, and the securities purchased for this amount are those for which plaintiff recovered judgment herein. Some sums of money were sent to her sister Clementine, and $12,000 was invested by defendant in securities in San Francisco. After forwarding the securities to defendant, plaintiff wrote to her concerning the same. Not receiving a reply and becoming suspicious, he came to San Francisco from Miami, Florida. Upon arriving here he went directly to defendant's apartment and in her absence discovered correspondence between her and an attorney, and also from her sister Clementine, as well as other documents including her record with banks. These documents convinced plaintiff that defendant and her sister had entered into a conspiracy to deprive him of his securities, and that they intended to keep them. Upon defendant's

return to her apartment she was confronted by plaintiff with this evidence and she informed him that she had been advised by her attorney to keep the bonds. She agreed to meet plaintiff the next day and discuss the matter with him. In the meantime plaintiff had procured an attorney who informed the Bank of California that the securities it had sold were the property of plaintiff, and defendant had stolen the same. The next day defendant visited this bank and was informed of plaintiff's claim. Instead of meeting her father as she had promised, and being frightened by the accusations made to the bank officials by plaintiff, she left that night for New York, taking with her the balance of the securities on hand here. Upon arriving in New York she learned that her father had procured a warrant for her arrest. She then telephoned him that if he had her arrested she would inform the authorities that he had committed perjury in his wife's maintenance suit in filing an affidavit to the effect that he was worth $6,000 only. Defendant was thereafter brought back to San Francisco. At this time she made no claim that the bonds belonged to her, but on the contrary she made statements to certain persons that the bonds belonged to her father and she had taken them to protect him. Like statements were made to an officer of the National City Bank at its office in San Francisco. She also informed a friend of hers that she had her father's securities in her name and that she intended to keep them for herself. This evidence is ample to support the finding that plaintiff was the owner and entitled to the possession of the securities. Aside from this positive testimony that no gift of the bonds was ever made to defendant as she claimed, her conduct during the entire transaction is inconsistent with the idea that her father made a gift of the securities to her. It is hardly probable that her aged and infirm father would have stripped himself of everything he possessed.

We are not called upon to express any opinion as to the standard of filial conduct displayed by defendant and her sister toward their aged and indulgent parent. Suffice it to say that it is the tragedy of Lear, retold. ■ Upon this branch of the case we conclude that the finding that a trust existed is fully supported by the evidence.

■  The further claim that plaintiff is not entitled to the relief sought for the reason that he does not come into a court of equity with clean hands is also without merit. At the time of the transaction plaintiff was over seventy-two years of age and infirm, he being a physical cripple. He had great confidence in defendant's legal ability and was guided by her advice. It was upon her constant urging that he sent the bonds to her for safekeeping, and his wife had no interest in the same, they being his separate property. It is true that in the action by his wife for separate maintenance and support plaintiff made an affidavit to the effect that he was worth only about the sum of $5,000, when as a matter of fact he owned the bonds in question. In the present suit he denied ever having advised his attorney to incorporate such a statement in the affidavit, and he testified that he signed all papers prepared by his attorney upon his advice without reading them. However this may be, defendant should not be permitted to take advantage of her own wrong.  ■  As was said in *Chamberlain* v. *Chamberlain*, 7 Cal. App. 634 [95 Pac. 659], one cannot lay a trap for another, secure his confidence, induce him to make a conveyance of his property in expectation that it will be returned, and thereafter retain the fruits of his perfidy on the ground that the donor too readily yielded to temptation to save himself at the possible expense of his creditors. The greater offense of the tempter overshadows and renders innocuous the weakness of the one of whom advantage is taken. Though a deed made for an improper purpose is unfairly procured through the undue influence of the grantee, in violation of a fiduciary relationship, abuse of confidence, oppression or fraud, a court of equity will still grant relief to one in fault. Such relief will not be denied to a party least in fault against one who has led him into the act by a violation of confidence. They are not in equal wrong. (*Anderson* v. *Nelson*, 83 Cal. App. 1 [256 Pac. 294].) Under the circumstances plaintiff should not be denied the relief he seeks.

This brings us to the final contention that the money judgment is unsupported by the evidence. The judgment determined plaintiff to be the owner of all those certain stocks and bonds and cash held in the name and in trust for defendant by Hudson Trust Company at Hoboken, New

Jersey. It was also determined that plaintiff also recover from defendant the net value of funds converted by her in the sum of $22,021.19, and that as to $1351.59 of said sum, plaintiff also be given judgment against defendant Bank of California National Association, said amount being on deposit to the credit of defendant in said bank. The court made special findings with reference to the various items involved. As all of these findings are attacked as being unsupported, it is necessary to discuss them in detail. They are in substance as follows: (1) That the sum of $1351.59 deposited in the Bank of California National Association belongs to plaintiff; (2) That all the denials in the answer of defendant are untrue and all the admissions are true; (3) That on July 19, 1929, plaintiff sent his daughter, Marian Birney, in trust for himself, bonds of the actual value of $60,202.74; (4) That defendant sold the same and, apart from certain coupons of the value of $2,177.50 (clipped therefrom and converted by her), she received for said bonds the sum of $60,202.74; (5) That defendant thereafter re-invested $40,000.66, being part of said $60,202.74, and bought directly in her name bonds of the market value of $39,646.67; that said bonds are in the custody of Hudson Trust Company at Hoboken, New Jersey, and held in trust in the name of defendant; that the bonds are of the value of $37,470 and cash in the amount of $2,176.67, or a total of $39,646.67 in all; (6) That defendant clipped from bonds originally entrusted to her the sum of $2,177.50; (7) That defendant disposed of certain bonds of the market value of $14,000 and converted the same to her own use, and subsequently delivered them to her sister, Clementine de Prosse; (8) That Clementine de Prosse re-invested a part of said $14,000 in securities of the market value of $5,131.47; (9) That from the 19th of July, 1929, the bonds and securities owned by plaintiff and converted by defendant have earned in interest the sum of $8,400; (10) That the sum of $1351.59 on deposit with Bank of California National Association is part of the proceeds from the sale of plaintiff's bonds; (11) That defendant has restored to plaintiff from the proceeds of the bonds entrusted to her, cash used for different purposes in the amount of $6,618.97.

The first finding, that the sum of $1351.59 was part of the proceeds derived from the sale of the securities, is fully supported by the evidence. The second finding, referring to the ownership of the securities, is also fully supported by the evidence. Findings three, four and six, relating to the value of the securities, are likewise fully supported. Finding five, relating to the investment of $40,000 of the converted funds and their deposit in the trust company at Hoboken, finds full support in the evidence, but there is no evidence in the record, so far as we have been able to discover, and counsel for respondent has pointed us to none, which supports the finding that these bonds were of the value of $37,470 only. On the contrary, the evidence shows that the sum of $40,000.66 was paid for the same. Appellant is entitled to a credit of their full market value. Finding six, relating to the amount of coupons clipped from the bonds, is fully supported. Finding seven, relating to the disposition of $14,000 of the bonds, is also fully supported. Appellant claims that she has been charged with the sum of $2,000 of this amount under finding four and that the finding constitutes a double charge in so far as the value of the Austrian Government bonds is concerned. The value of the Austrian bonds was not duplicated in the judgment. Finding number eight, it is claimed, is unsupported in so far as it determines the value of the bonds restored to plaintiff. There is evidence to show that these bonds were of the value of $4,000 only. Appellant was given a credit of $5,131.47 for the same. Appellant has, therefore, no cause for complaint on account of this finding. Finding nine, to the effect that the converted bonds earned a total of not less than $8,400 interest, it is claimed is unsupported by the evidence. Respondent waives this amount of the judgment. Finding ten, to the effect that the deposit in the Bank of California National Association was part of the proceeds of the sale of the bonds, was admitted. Finding eleven is assailed for the reason that it fails to include in the credit allowed expenditures by defendant which were directly authorized by plaintiff. It appears without conflict in the record that plaintiff directly authorized defendant to advance certain sums for different purposes, and that she incurred expenses on trips to New York made at plaintiff's request and for his

benefit. For these several undisputed items she was given no credit. She is entitled to the same. . She further claims that she was also entitled to a further credit, assuming that she had no interest in the securities sent her, for the support of herself and sister during the time she was possessed of the same, as she had full authority to make expenditures for this purpose. No issue was presented upon this subject. Moreover, the conduct of herself and sister deprives her of any such benefits.

From what we have said it follows that the portion of the judgment decreeing the securities in question to be the property of plaintiff, and that defendant was a mere trustee thereof, should be and it is hereby affirmed. The portion decreeing plaintiff to be entitled to a judgment of $22,021.19 is reversed, with directions to the trial court to take evidence and determine the correct amount in accordance with the views herein expressed.