[Civ. No. 2320.   Fourth Appellate District.—November 26, 1940.]

JOHN KARALLIS, Appellant, v. PETER SHENAS, Respondent.

Harry W. Horton for Appellant.

Hugh S. McKinnon and C. B. Smith for Respondent.

BARNARD, P. J.—This is an action for damages for fraud and misrepresentation through which the plaintiff claims to have been induced to transfer to the defendant his interest in a restaurant business, including the fixtures. A motion for a nonsuit, which was taken under advisement, was granted after the defendant's evidence was heard. A judgment of dismissal followed, from which the plaintiff has appealed.

Viewed in the light most favorable to the appellant the evidence shows that he and one Callas, as copartners, were operating a restaurant in a building owned by the respondent under a lease which contained a provision that it could not be assigned without the written consent of the respondent. Callas also owed the appellant $1,059 on a note secured by a chattel mortgage on his interest in the restaurant fixtures. On May 25, 1931, Callas died and thereafter the appellant continued to operate the business as the surviving partner. He endeavored to sell the restaurant but was unable to do so because the respondent refused to consent to an assignment of the lease. In October, 1931, the respondent told him that he would not consent to a transfer of the lease but that he desired to enter into a partnership with him in operating the restaurant. He also told him that a certain lawyer in El Centro was the public administrator, and that for a fee of $100 this lawyer would take the necessary steps to enable this to be done, including the getting of a good title from the estate of Callas.

The respondent took the appellant to this lawyer, who had been the respondent's lawyer for more than ten years, and the lawyer told the appellant that the best way out of the situation was for the respondent to buy the entire business, that it would be necessary to get the court's approval of

the sale of the estate's interest, and that after the matter was completed the respondent would convey a one-half interest back ·to him. The appellant told the lawyer that he knew nothing about courts or lawyers and asked for some writing to show what he was to get. He was told that he could trust the respondent who was his friend. As a result of a plan then explained to him the appellant loaned the respondent $1,000 which he used to purchase the business. The respondent agreed to repay this $1,000 to the appellant, to pay the $1,059 which was owed him by the deceased partner, and to give him a half interest in the business after the deal was completed. The lawyer prepared all papers and put the deal through. Among other things, he prepared for the appellant and presented to the court an account and report of his activities as surviving partner, alleging therein that he had received an offer from the respondent of $1,000 for the entire restaurant business, that this was the best sale that could be made of the property, and praying for an order approving such sale. At the hearing of this petition and report in the probate proceeding the appellant testified and an order was made approving this sale.

The sale was consummated and title to the restaurant business was transferred to the respondent on November 14, 1931. The appellant and the respondent then operated the restaurant business, dividing the profits between them, until November, 1932. At that time the respondent locked the appellant out of the restaurant, declared that he had no rights in connection therewith, and refused to pay him anything or to permit him to continue in the operation of the business.

On behalf of the respondent there was evidence to the effect that he purchased the entire business for $1,000 without any agreement that the appellant was to have any interest therein, and that he temporarily allowed the appellant to continue to work in the restaurant on an agreement that he was to receive one-half of the profits in lieu of wages. While he admitted receiving $1,000 from the appellant at the time he purchased the restaurant he claimed that the appellant had paid him this amount for a release from further liability on the original lease, which did not expire until 1935, and he denied that he owed anything to the appellant or that he had made any agreement with him other than an agreement for his services for an indefinite time.

■ It is apparent that issues of fact were presented upon conflicting evidence and that the granting of a motion for nonsuit was improper unless the same was justified by some rule of law under which it became unnecessary to decide these issues of fact. The motion for nonsuit was made upon two grounds: First, that the evidence disclosed that the appellant had conspired with the respondent to commit a fraud on the estate of Callas and also upon the court and, second, that the action was barred by the statute of limitations. The motion must have been granted upon one or both of these grounds, and the respondent here contends that either ground is sufficient to sustain the judgment of dismissal.

■ On behalf of the respondent it is argued that, irrespective of any issue of fact, the appellant could not be allowed to recover anything since to permit him to do so would be to allow him to take advantage of his own fraud. It is argued that, at best, the appellant relies upon a secret agreement with the respondent and that he could not recover without proving that he had been guilty of a fraud upon the estate of Callas and upon the court. Conceding that such a situation appears, it may be first observed that it does not appear that the estate of Callas was defrauded in the sense that its interest in this restaurant property was sold for less than could otherwise have been obtained. Apparently, all efforts to sell the property had been blocked by the respondent and we can find no evidence in the record which would indicate that a larger amount could have been realized by the estate for its interest in the property.

■ While the general rule relied upon is well established there is a well recognized exception to the rule in cases where the party seeking relief is not a free moral agent, where his consent to the improper act is obtained through menace, duress or undue influence, and where his wrongdoing is in fact much less than that of his adversary who, taking advantage of him, has led him into it. (*Birney* v. *Birney*, 217 Cal. 353 [18 Pac. (2d) 672]; *Anderson* v. *Nelson*, 83 Cal. App. 1 [256 Pac. 294]; *Young* v. *Young Holdings Corp., Ltd.*, 27 Cal. App. (2d) 129 [80 Pac. (2d) 723]; *Grider* v. *Manisera*, 11 Cal. App. (2d) 355 [53 Pac. (2d) 982]; *Tognazzi* v. *Wilhelm*, 6 Cal. (2d) 123 [56 Pac. (2d) 1227].) As was said in *Anderson* v. *Nelson*, *supra*, "Many of these cases proceed upon the theory stated in the one last cited, that 'relief will not be denied to the party least in fault against one who has

led her into the act by a violation of confidence. They are not in equal wrong.' '' In *Birney* v. *Birney, supra,* the court said:

"The further claim that plaintiff is not entitled to the relief sought for the reason that he does not come into a court of equity with clean hands is also without merit. At the time of the transaction plaintiff was over seventy-two years of age and infirm, he being a physical cripple. He had great confidence in defendant's legal ability and was guided by her advice. It was upon her constant urging that he sent the bonds to her for safekeeping, and his wife had no interest in the same, they being his separate property. It is true that in the action by his wife for separate maintenance and support plaintiff made an affidavit to the effect that he was worth only about the sum of $5,000, when as a matter of fact he owned the bonds in question. In the present suit he denied ever having advised his attorney to incorporate such a statement in the affidavit, and he testified that he signed all papers prepared by his attorney upon his advice without reading them. However this may be, defendant should not be permitted to take advantage of her own wrong. As was said in *Chamberlain* v. *Chamberlain,* 7 Cal. App. 634 [95 Pac. 659], one cannot lay a trap for another, secure his confidence, induce him to make a conveyance of his property in expectation that it will be returned, and thereafter retain the fruits of his perfidy on the ground that the donor too readily yielded to temptation to save himself at the possible expense of his creditors. The greater offense of the tempter overshadows and renders innocuous the weakness of the one of whom advantage is taken. Though a deed made for an improper purpose is unfairly procured through the undue influence of the grantee, in violation of a fiduciary relationship, abuse of confidence, oppression or fraud, a court of equity will still grant relief to one in fault. Such relief will not be denied to a party least in fault against one who has led him into the act by a violation of confidence. They are not in equal wrong.''

We think the instant case comes within the exception above noted. It appears that the appellant was not an educated man, that he was trying to make the best of the circumstances in which he was involved by the death of his partner, and that he was faced with legal problems with which he was unfamiliar. In a very real sense he was not a free moral

agent but was subject to a form of coercion. He was under the necessity of selling or reorganizing the business and he found himself unable to sell because the respondent refused to consent to the assignment of the lease. The respondent had him within his power and he was not free to do as he pleased. While he was in this position the respondent suggested a course of procedure to him and told him that the public administrator, who was also a lawyer, could handle the matter in proper legal form and to that end. Without telling the appellant that this man was also his own lawyer, the respondent took the appellant to this lawyer and with his help the matter was carried out as the respondent had suggested. Relying upon what was told him by the respondent and his attorney the appellant conveyed his property to the respondent. While the appellant was induced to do something which he should not have done it should not be held, under these circumstances, that as a matter of law his act prevents his recovery as against the one who was mainly responsible for any unlawful act and who was guilty of the greater wrong.

The only remaining question is whether the action was barred by the statute of limitations. The transaction giving rise to the action occurred in October and November, 1931. The complaint in this action was filed on September 13, 1935. The respondent argues that the appellant knew that the agreement was not going to be kept by the respondent as early as February, 1932, and that the statute of limitations began to run at that time. Reliance is placed upon a conversation which the appellant admitted he had had with the respondent in February, 1932, in which the respondent told the appellant that if he did not sign and accept certain papers which were then offered to him he would get nothing further. In this connection it appears that in February, 1932, the respondent had his lawyer, the one who represented him in the original transaction, prepare a lease of the restaurant premises whereby the same were leased to "Peter Shenas and John Karallis, Copartners", and also a note for $990 payable to the appellant and secured by a chattel mortgage in which the respondent mortgaged "an undivided one-half interest" in the furniture and fixtures of this restaurant to the appellant. These papers were dated February 19, 1932, and the respondent signed the note and mortgage. The respondent sent the appellant to his lawyer's office for

the purpose of signing the lease. The appellant refused to sign or to accept the note and mortgage because the latter did not cover the full amount which the respondent had agreed to pay him. A few days later, the appellant had a conversation with the respondent in which he told the respondent that the papers were not correct and the respondent told him that he "would not do anything else". The respondent argues that this was sufficient to inform the appellant that he repudiated the original agreement and would give the appellant no interest in the restaurant, and that the statute of limitations then began to run. We find nothing in the record showing that the respondent then told the appellant that he would have no further interest in the restaurant. The most that can be said is that the appellant was then informed that the respondent would not pay him a larger amount than $990 on that part of the agreement which called for a payment to the appellant. Nothing was said, however, to the effect that the respondent would no longer recognize that the appellant still owned a one-half interest in the business. The respondent's wife, who was the bookkeeper in the business, then told the appellant "We will fix things up", and the parties went on operating the restaurant as before and continued to divide the profits half and half. That situation prevailed until November, 1932, when the appellant was locked out and for the first time informed that he had no interest in the business. If, as the respondent now claims, he owed the appellant nothing, and merely allowed the appellant to work in the restaurant for a time for one-half of the profits in lieu of wages, it is passing strange that in February, 1932, he had his lawyer prepare a lease to himself and the appellant as copartners and at the same time had prepared and signed a note for $990 payable to the appellant, secured by a chattel mortgage on his undivided one-half interest in the fixtures in the restaurant. While it appears that a dispute existed as to the amount owed to the appellant, there is no evidence of any controversy at that time with respect to the appellant's right to an equal ownership in the business. No change then took place and the parties continued to operate the business as they had been doing, until the final break came. Under the circumstances appearing, it cannot be held that the statute of limitations began to run against this cause of action until the appellant was locked out in November, 1932. The action

is governed by subdivision 4 of section 338 of the Code of Civil Procedure, and it follows that it was not barred.

Plaintiff's cause of action not being barred by either of the rules of law relied upon, and issues of fact having been presented which should have been passed upon, the court erred in granting the motion for a nonsuit and in entering the judgment of dismissal.

The judgment is reversed.

Marks, J., and Griffin, J., concurred.