[Civ. No. 12166. First Dist., Div. One. Feb. 24, 1943.]

MAX BELLING, Appellant, v. J. CROTER, Respondent.

McKee, Tasheira & Wahrhaftig, Ridley Stone and Myron Harris for Appellant.

Theodore Golden and James R. Agee for Respondent.

WARD, J.—This is a suit brought by plaintiff against defendant to establish the existence of a partnership, which defendant denied, and for an accounting of its profits. The trial court found from the evidence that the plaintiff had not come into court with clean hands, and upon this ground denied him the equitable relief sought. It is the contention of plaintiff, appellant herein, that the maxim, he who comes into equity must come with clean hands, was erroneously applied.

Appellant contends generally on this appeal that whatever blame attaches to his conduct in the transaction between the parties, the respondent was as much or even more to blame than he, and this particularly by reason of the relationship of trust and confidence existing between

them, and that consequently the court erred ·in ·denying him relief. Appellant does ''not contend that the findings are unsupported by sufficient evidence,'' but ''that all· the facts found, all presumed to have been based on sufficient testimony, indicate that ·the conclusion of the court was error.''

The trial court found with particularity and in detail the grounds upon which its conclusion of unclean hands is based. In view of appellant's concession that they are supported by sufficient evidence, we set forth the findings as they appear in the record: ''That on May 10th, 1940, plaintiff filed the above entitled action for equitable relief as set forth in his complaint on file herein, reference to which is hereby made and by such references incorporated herein; that in such action plaintiff alleged that on or about August 22nd, 1929, plaintiff and defendant entered into an oral agreement of copartnership for the purpose of engaging in the retail furniture business; that it is true that at said last mentioned time plaintiff had a number of creditors to whom he then owed moneys; that with the intention and for the purpose of concealing from said creditors his interest in the said co-partnership and said furniture business, plaintiff caused, allowed and permitted all *indicia* and evidence of ownership in and of said furniture business to be executed in the name of defendant alone and as though defendant was the sole owner; that with the knowledge, consent and cooperation of plaintiff and in accordance with plaintiff's said purpose, there were executed, in the month of August, 1929, the following instruments:

''1. On August 22nd, 1929, a Bill of Sale of the stock in trade and fixtures, with which said furniture business was commenced, executed to defendant alone, as the 'Buyer.'

''2. On August 25th, 1929, a Certificate of Individual Doing Business Under a Fictitious Name was executed by defendant alone; that said Certificate recited that defendant was 'the sole owner and proprietor of said (furniture) business'; that said Certificate was filed in the Office of the County Clerk of Alameda County on August 29th, 1929.

''3. Business cards of 'Belling Furniture Co.' showing 'J. Croter, Proprietor' and 'Max Belling, Manager.'

''4. Original lease of business premises taken in name of defendant, alone, as sole lessee.

"5. Workmen's Compensation Insurance policies listing plaintiff as an employee of said furniture business.

"That on December 5th, 1929, said creditors of plaintiff filed a Petition in Bankruptcy against plaintiff and on December 28th, 1929, plaintiff was adjudicated a bankrupt; that on January 10th, 1930, plaintiff filed his schedules in bankruptcy in which, as to the item, 'Stock in trade in —— business of —— at —— of the value of ——', he answered, 'None'; that plaintiff did not at any place in said schedules nor in said bankruptcy proceedings reveal or admit any interest, either as partner or otherwise, in said furniture business.

"That throughout said bankruptcy proceeding, plaintiff failed to reveal and concealed his alleged interest in said furniture business from his creditors, the Referee in Bankruptcy, and the Trustee.

"That during the years from 1929 to 1940, inclusive, plaintiff filed his Individual Income Tax Returns with the Federal government on the basis of being an employee of the said furniture business; that said returns did not reveal any proprietary interest, as a partner or otherwise, in the profits of said furniture business.

"That on May 27th, 1937, plaintiff signed and executed a written instrument stating that the sole owner of said furniture business was the defendant; that at the trial of this action, plaintiff testified that his purpose in executing said instrument was to conceal from creditors of the Jade Club, of which he was the ostensible proprietor, his, plaintiff's partnership interest in said furniture business.

"At the time of the alleged creation of said partnership as set forth in said complaint and for many years prior thereto and until the termination of said partnership as alleged in said complaint, plaintiff reposed confidence in said defendant and relied upon him for advice in both personal and business affairs.

"For many years prior to the 1st day of January, 1929, plaintiff and his father were together conducting a furniture business in the City of Oakland, County of Alameda, State of California at Tenth and Clay Streets. In the early part of 1929 plaintiff became insolvent and the said business so conducted by him was insolvent. Plaintiff then consulted with said defendant with respect thereto. Said defendant on behalf of said plaintiff made to the creditors of said plaintiff an

offer to settle with said creditors on the basis of twenty-five cents on the dollar. This offer was made by said defendant personally and through one Ernest Torregano, an attorney representing said plaintiff, and as a part of said offer, deposited with the San Francisco Board of Trade the sum of $10,000. The said offer was not accepted.

"Plaintiff thereupon again advised with defendant and advised with the said attorney and relied upon said attorney's advice, and after such advice and in reliance thereon and on the 12th day of August, 1929, conveyed his said business and all the assets thereof to G. W. Brainard, Secretary of the San Francisco Board of Trade. Said San Francisco Board of Trade offered the said business and its assets for sale and the said business and its assets were purchased by one Percy Bacharach, who acted as agent for said defendant and who in turn conveyed said assets to said defendant.

"While plaintiff and his witnesses testified to the fact that on and prior to the 22nd day of August, 1929, said plaintiff and said defendant entered into an oral partnership by which oral partnership it was agreed that said defendant would purchase the stock in trade of said business at a sale to be held by the Board of Trade and would put up all necessary money so to purchase said business, in which said agreement it was further agreed that said defendant would thereafter invest in said partnership all necessary moneys and that plaintiff should contribute thereto his knowledge, skill and experience, the Court makes no finding as to whether such a partnership did or did not exist; and with reference thereto the Court finds that, in order to protect the investment of said defendant in said business and at defendant's request and for the purpose of concealing from his creditors his interest in said co-partnership and said furniture business, said plaintiff caused, allowed and permitted

"(a) the bill of sale from said Percy Bacharach, dated August 22, 1929, to be executed to defendant alone;

"(b) the filing on August 22, 1929, of a certificate of individual doing business under a fictitious name, in which said certificate defendant recited that he was 'the sole owner and proprietor of said furniture business' and in which it was stated that said business was being conducted under the name of 'Belling's Furniture Co.';

"(c) the preparation by plaintiff's said attorney of an employment agreement reciting that plaintiff was being employed by defendant to manage said furniture business at a

salary of $75.00 per week, which said agreement, however, was never signed by the parties thereto;

"(In ink) items a, b and c above were done in accordance with advice of plaintiff's attorney. FMO

"(d) the issuance of business cards of 'Belling's Furniture Co.' showing 'J. Croter, Proprietor' and 'Max Belling, Manager';

"(e) the taking of the original lease to the premises in the name of defendant;

"(f) the procuring of workmen's compensation insurance policies listing plaintiff as an employee of said furniture business.

"From the commencement of said business on August 29, 1929, to the end of said year 1929, said business operated at a loss and said business operated at a loss during 1930 and for several years thereafter, with the result that defendant was obliged to and did invest more moneys for the conduct of said business.

"During the succeeding years until February 1940, said defendant on occasions introduced said plaintiff and held said plaintiff out as his partner.

"On December 5, 1929, an involuntary proceeding in bankruptcy was filed against said plaintiff and on December 28, 1929, an order of adjudication of bankruptcy was made and the said matter was referred to a Referee. Said San Francisco Board of Trade turned over to said estate in bankruptcy all moneys received by it arising out of said sale as aforesaid and thereafter said moneys were distributed prorata to the creditors of said bankrupt who thereafter and on August 1, 1932, was granted a discharge in bankruptcy by an order duly given and made on said August 1, 1932.

"On the date of the filing of said petition in involuntary bankruptcy, to wit, December 5, 1929, and also on December 28, 1929, the date of the order of adjudication, and also on January 11, 1930, and throughout the pendency of said bankruptcy proceedings, the interest of said plaintiff in said partnership, if any existed as alleged by him, was of no value in that if at any time during said period said alleged partnership should have been liquidated and the alleged capital contributions made thereto by said defendant had been repaid to him, there would have been no remaining assets for distribution to plaintiff and in fact there would have been a deficit.

"The said business, known as 'Belling's Furniture Co.' as

aforesaid, moved to certain premises at 14th and Clay Streets, Oakland, California, and certain leases were executed to said plaintiff and said defendant, and signed by said plaintiff and said defendant, as partners, and in particular the following leases were executed covering the premises occupied by said business:

"(a) Lease executed by Central Bank to Max Belling alone in 1936;

"(b) Lease executed by Bank of America N.T.& S.A. to Max Belling and J. Croter individually and as co-partners doing business under the name of Belling's Furniture Company, dated February 4, 1937;

"(c) Lease executed by Central Bank of Oakland to Max Belling and Jake Croter individually and as co-partners, dated May 18, 1937;

"(d) Lease executed by Bank of America N.T.&S.A. to Max Belling and J. Croter individually and doing business as partners under the firm name of Belling's Furniture Company, dated January 8, 1938.

"While, as aforesaid, a certificate of doing business under the name of 'Belling's Furniture Co.' showing that defendant was the sole owner, was filed on the 29th day of August, 1929, no creditor of the bankrupt estate or of plaintiff, and no creditor of the alleged partnership was apparently prejudiced thereby.

"Plaintiff testified as follows: In 1936, said plaintiff and said defendant together with other persons not involved in this action, engaged in a business known as the Club Jade, situated in El Cerrito, California. In said business said plaintiff and said defendant together owned a one-half share thereof, said plaintiff and said defendant each owning a one-quarter interest therein. The building in which said business was situated was erected by said plaintiff and defendant in association with other persons. The lease to the premises was taken in the name of the plaintiff. The business was operated as a corporation under the name of Club Jade and except for qualifying shares of directors, all shares of stock were issued to defendant and by him transferred without compensation to plaintiff, who was to hold said shares of stock for the following persons: A one-half interest therein for the persons with whom said plaintiff and said defendant were associated, and the other half for the equal benefit of plaintiff and defendant. Said business was unsuccessful and was closed in 1937. On and prior to the 27th day of May, 1937, said defendant told said plaintiff that he feared

that certain creditors of said Club Jade might attach or at-
tempt to reach the assets of said Belling's Furniture Co.,
and requested plaintiff to sign a document showing that plain-
tiff had no interest in said Belling's Furniture Co., and there-
upon defendant dictated and caused to be prepared a document
and requested plaintiff to sign it, and plaintiff pursuant to
said request of said defendant signed such document, which
said document is in words and figures as follows, to wit:

"Letterhead of Belling Furniture Company. 'Thursday,
May 27, 1937. In the matter of the lease with the Bank of
America National Trust & Savings Association on the premises
of 533 - 37 - 14th Street, Oakland, California, made out to Max
Belling and Jake Croter, individually and as co-partners, do-
ing business under the firm name and style of Belling Furni-
ture Company, and also the lease with the Central Bank of
Oakland on premises at 1314 Clay Street, Oakland, California,
it is hereby agreed between Max Belling and J. Croter that this
business is not a co-partnership; that Jake Croter is the sole
owner of the said business, being that it is his own investment.
MAX BELLING, Witnesses: LEONARD NACHMAN, JACK
D. RUTTAN.'

"The court makes no finding as to the truth of plaintiff's
explanation of the circumstances surrounding and the reasons
for his signing said document because of the Court's finding
herein that said document was signed by plaintiff for the pur-
pose of and with the intent to defraud creditors.

"On said 27th day of May, 1937, there were no creditors
of said Club Jade, except for small current obligations, the
only other outstanding obligations being that for an electric
sign to the Electric Products Company in the amount of
$1135.60, the lease contract for which sign had been signed by
said defendant personally and had been assumed by the Ze-
manskys, the other persons associated with said plaintiff and
said defendant in said Club Jade.

"The Court finds from the evidence herein that no creditor
of said Club Jade was apparently prejudiced by the execution
of said document of May 27, 1937. Said document was not
shown to any creditor and said document was at all times re-
tained by said defendant.

"Immediately after the date of the alleged formation of
said alleged partnership as aforesaid, said parties engaged in
the business of buying and selling furniture in a retail store
in the City of Oakland, County of Alameda, State of Califor-
nia, under the name of 'Belling's Furniture Co.' and continu-

ously from August 22, 1929, engaged in such business until the 23rd day of February, 1940. Continuously from the commencement of said business said plaintiff devoted his time, attention and skill to the management thereof and said defendant made all necessary capital contributions thereto.''

Whenever necessary the evidence will be referred to in considering the points presented.

The complaint alleges and the evidence shows that in February of 1940 respondent Croter denied that a partnership ever existed and excluded Belling from the partnership and premises. Belling then commenced this action wherein the value of the partnership is alleged to be $100,000, of which he claims to be entitled to one-half. As already stated, the court concluded that the evidence showed a case for the application of the doctrine of ''unclean hands,'' and accordingly that Belling was not entitled to the aid of a court of equity. Appellant asks that the judgment be reversed with instructions to the trial court to determine whether a partnership existed, and, if so, that an accounting be had.

The question on appeal, as previously stated, involves the doctrine of ''unclean hands,'' including a claimed confidential relation, inducement by respondent (but in fact acting on the independent advice of an attorney), absence of possible harm to others as a result of wrongdoing and the additional claim of ''least at fault.''

■ '' . . . as the very foundation of an equity forum is good conscience, any really unconscientious conduct connected with the controversy to which he is a party is sufficient justification for the court to close its doors to him.'' (*De Garmo* v. *Goldman*, 19 Cal.2d 755, 765 [123 P.2d 1]; *Allstead* v. *Laumeister*, 16 Cal.App. 59 [116 P. 296].) The burden is on the one seeking relief to prove his clean hands, and ordinarily he may not rely on the unclean hands of the defendant (*De Garmo* v. *Goldman, supra*) except as hereinafter noted.

■ The crux of the problem presented is whether or not the findings justify an application of the exception to the unclean hands rule that though a party has been guilty of wrongdoing with respect to the matter in which relief is sought, he is not to be denied the aid of a court of equity if it be shown that he is the one ''least at fault,'' and that the party against whom relief is sought was guilty of wrongdoing in respect to the same matters and is ''most in fault.'' (*Chamberlain* v. *Chamberlain*, 7 Cal.App. 634 [95 P. 659]; *Birney* v. *Birney*, 217 Cal. 353 [18 P.2d 672]; *Young* v. *Young Holdings Corp.*

*Ltd.,* 27 Cal.App.2d 129 [80 P.2d 723]; *Karallis* v. *Shenas,* 41 Cal.App.2d 694 [107 P.2d 395]; *Watson* v. *Poore,* 18 Cal. 2d 302 [115 P.2d 478].) The above rule is ordinarily invoked where the party seeking relief is not a free moral agent, and his participation in the wrongdoing is in fact the result of the undue influence, menace or duress of the other party. (*Colby* v. *Title Ins. & Trust Co.,* 160 Cal. 632 [117 P. 913, Ann.Cas. 1913A, 515, 35 L.R.A. N.S. 813].) ■ The instances of wrongdoing in the present case bear directly upon the matter in which relief is sought—the establishment of the partnership—and consist in many instances in questionable efforts to conceal the alleged partnership. Appellant entered willingly, or at least without objection, into the various acts of wrongdoing. He was a free moral agent, and his consent to the concealment of the partnership was not obtained through duress, menace or undue influence.

■ It is claimed that a confidential relationship existed between appellant and respondent. The court found that "plaintiff reposed confidence in said defendant and relied upon him for advice in both personal and business affairs." In *Bacon* v. *Soule,* 19 Cal.App. 428, 434 [126 P. 384], the court said: "Such a relation ordinarily arises where confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent." Assuming that the above finding could be stretched into a definite finding of confidential relationship, upon the theory that the parties, as alleged in the complaint, were partners in a business venture, and that respondent owed a duty to act with the utmost good faith for the benefit of appellant, still the record discloses that in most matters referred to herein appellant sought the advice of an attorney—"a friend of mine"—, and followed such advice. Irrespective of a possible confidential relationship, appellant sought and followed independent advice. He testified that some of the acts of wrongdoing were performed because he acted upon the attorney's advice and because he (appellant) wished to protect respondent's investments.

■ Appellant uses as an argument the fact that the record nowhere shows that any creditors were in fact defrauded through his participation in the execution or use of instruments

indicating ownership of the business in respondent. Equity, in administering its remedies, regards not alone the accomplished fact, but also the intent and purpose of the act. Of course, the purpose of concealment may be best demonstrated by proof that it resulted in fraud, but the "unclean hands" principle is equally applicable to cases of intent to defraud as to those in which the intent ripened into accomplishment. (*Tognazzi* v. *Wilhelm*, 6 Cal.2d 123 [56 P.2d 1227]; *Allstead* v. *Laumeister, supra.*) If appellant had not been successful in obtaining his discharge in bankruptcy, and though the partnership interest was of little or no value at the time, still, if the creditors' claims could have been kept alive, those claims might have been subsequently satisfied by the partnership interest (8 C.J.S., p. 1490) which appellant alleges in the present complaint to be of a value of $50,000. The findings are sufficient to sustain the conclusion of law that "plaintiff is not entitled to the aid or interposition of a court of equity because he does not come into court with clean hands by reason of his own conduct" and, being admittedly supported by sufficient evidence, do not warrant the application of the exception to the unclean hands rule. Accordingly, they afford ample ground for the court's refusal to consider whether a partnership existed. The refusal of the court to find further as to the reasons why plaintiff signed the document dated May 27, 1937, is explained in the finding that it was signed "for the purpose of and with the intent to defraud creditors."

Notwithstanding the admission of the sufficiency of the evidence to support the findings, appellant, by reason of the court's refusal to find on certain matters, has quoted his evidence upon those points as if a demurrer to the evidence had been sustained. We have not considered the record in this light. This is not a case of a nonsuit (*Karallis* v. *Shenas, supra*), but a decision upon the vital point in issue. As a matter of precaution we have examined the entire record and have reached the conclusion that the trial court would not have been justified in determining that defendant was "most at fault," or "of equal fault." There is no evidence that defendant laid a trap for plaintiff (*Chamberlain* v. *Chamberlain, supra*), or that he caused him to perform any act in violation of confidence (*Birney* v. *Birney, supra*). In *Young* v. *The Young Holdings Corp. Ltd., supra,* it appears that there was a conspiracy to trick and defraud the plaintiff. In *Lord* v. *Smith,* 109 Md. 42 [71 A. 430], the facts are somewhat similar except that it was there determined that the alleged wrong-

doing did not demand or justify the application of the maxim. The trial court herein has taken a contrary view. We can find no justification for interference with the judgment.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing was denied March 26, 1943, and appellant's petition for a hearing by the Supreme Court was denied April 23, 1943. Carter, J., and Traynor, J., voted for a hearing.